Ronald J. Fisher, Esq. (SBN: 298660)
  fisher@braunhagey.com
H. Chelsea Tirgardoon, Esq. (SBN: 340119)
  tirgardoon@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR PLAINTIFF
THIRD STREET DATA, INC.
D/B/A TEAMABLE, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THIRD STREET DATA, INC., D/B/A TEAMABLE, INC.,<br><br>  Plaintiff,<br><br>v.<br><br>JESSICA SCHERTZ,<br><br>  Defendant. | Case No. 3:24-cv-1309<br><br>**COMPLAINT FOR:**<br><br>(1) Violation of Computer Fraud and Abuse Act (18 U.S.C. § 1030)<br>(2) Violation of California Comprehensive Computer Data Access and Fraud Act (Cal. Pen. Code § 502)<br>(3) Violation of Defend Trade Secrets Act (18 U.S.C. §§ 1836, *et seq.*)<br>(4) Violation of California Misappropriation of Trade Secrets Act (Civ. Code §§ 3426 *et seq.*)<br>(5) Breach of Fiduciary Duty<br>(6) Breach of Contract<br>(7) Declaratory Judgment<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Third Street Data, Inc. d/b/a Teamable, Inc. ("Teamable") brings this Complaint against Defendant Jessica Schertz. Teamable alleges as follows:

### THE PARTIES

1. Plaintiff Teamable is a California corporation with its principal place of business at 447 Sutter Street, Suite 405 PMB1309, San Francisco, California.

2. Defendant Jessica Schertz is an individual and citizen of the State of Iowa. Ms. Schertz was Teamable's Chief Operations Officer from March 1, 2022 to March 1, 2024.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 and 18 U.S.C § 1836(c). The Court has supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

4. The Court has personal jurisdiction Defendant because Defendant's tortious acts were aimed at California, and because Defendant agreed in Section 13(a) of Defendant's employment contract that "any disputes arising out of or in relation to this Agreement shall be exclusively heard before the state courts located in San Francisco County, California and the federal courts in the Northern District of California." In that same provision, Defendant also "expressly consent[ed] to the personal jurisdiction of such courts for any disputes arising out of or in relation to this Agreement.".

5. Venue is proper in this district under 28 U.S.C. § 1391, because a "substantial part of the events or omissions" on which the claims are based occurred in this district, and because Defendant agreed in Section 13(a) of Defendant's employment contract that "any disputes arising out of or in relation to this Agreement shall be exclusively heard before the state courts located in San Francisco County, California and the federal courts in the Northern District of California."

### FACTS

6. Defendant was hired by Teamable in 2017 as a part-time contractor. Defendant rose through the company to become its Chief Operating Officer.

7. During all times of Defendant's employment, she was bound by the terms of her employment agreements, which provide:

> **2. Confidential Information.**
>
> A. Company Information. I agree at all times during my employment with the Company and thereafter, to **hold in the strictest confidence**, and **not to use, except for the benefit of the Company, or to disclose** to any person, firm or corporation without written authorization of the President or the Board of Directors of the Company, any **Company Confidential Information**. I understand that my unauthorized use or disclosure of Company Confidential Information during my employment will lead to disciplinary action, up to and including immediate termination and legal action by the Company.

CIIAA § 2(A) (emphasis added).

> "Company Confidential Information" means any nonpublic information that relates to the actual or anticipated business, research or development of the Company, or to the Company's technical data, trade secrets or know-how, including, but not limited to, research, product plans or other information regarding the Company's products or services and markets therefor, customer lists and customers (including, but not limited to, customers of the Company on which I called or with which I may become acquainted during the term of my employment), software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances and other business information; provided, however Company Confidential Information does not include any of the foregoing items to the extent the same have become publicly known and made generally available through no wrongful act of mine or of others.

*Id.*

8. Company Confidential Information includes, without limitation, all information pertaining to Teamable's documents, finances and business information, and work-product including concepts, software, inventions, developments, arrangements, and programs, and any other information disclosed to or otherwise learned by Defendant.

9. Defendant's contract makes clear that Defendant was required to "*immediately deliver*" and not keep "*any and all Company property, including, but not limited to, Company Confidential Information*" along with any work product developed or obtained by her.

> **5. Returning Company Documents**. Upon separation from employment with the Company or on demand by the Company during my employment, I will *immediately deliver* to the Company, and *will not keep in my possession, recreate or deliver to anyone else, any and all Company property, including, but not limited to, Company Confidential Information*, Associated Third Party Confidential Information, as well as all devices and equipment belonging to the Company (including computers, handheld electronic

> devices, telephone equipment, and other electronic devices), Company credit cards, records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, photographs, charts, all documents and property, and reproductions of any of the aforementioned items that were developed by me pursuant to my employment with the Company, obtained by me in connection with my employment with the Company, or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to Section 3.C. I also consent to an exit interview to confirm my compliance with this Section 5.

CIIAA § 5 (emphasis added).

10. Defendant also agreed to confirm her compliance with this provision by completing a Termination Certification:

> **6. Termination Certification.** Upon separation from employment with the Company, I agree to immediately sign and deliver to the Company the "Termination Certification" attached hereto as Exhibit C. I also agree to keep the Company advised of my home and business address for a period of three (3) years after termination of my employment with the Company, so that the Company can contact me regarding my continuing obligations provided by this Agreement.

CIIAA § 6 (emphasis added).

11. The Termination Certification certifies that an employee does not possess or has failed to return any Company work product and will continue to preserve all "Company Confidential Information."

> This is to certify that ***I do not have in my possession, nor have I failed to return***, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items
>
> …
>
> I further agree that, in compliance with the At Will Employment, Confidential Information, and Invention Assignment Agreement, ***I will preserve as confidential all Company Confidential Information***

CIIAA Ex. C (emphasis added).

12. On February 26, 2024 at approximately 2:40 PM Pacific, Defendant received a report from an independent investigator who had investigated allegations of labor law violations Defendant had raised. The report found that none of Defendants' claims were substantiated.

13. Starting at approximately 5:30 PM Pacific on February 26, 2024, Defendant accessed and downloaded a bevy of Teamable's trade secrets and highly sensitive and confidential information, including signed Teamable contracts; human resources records containing payroll information of other Teamable employees; documents regarding Teamable's security infrastructure; documents describing Teamable's go-to-market strategies that contain descriptions of target markets, potential acquisition targets, and financial projections; proprietary technology files, including engineering and design documents containing valuable details about Teamable's intellectual property and proprietary technology; and legal files, including internal documents on mergers and acquisitions.

14. Defendant resigned from Teamable on March 1, 2024. Teamable discovered Defendant's unauthorized access thereafter.

## FIRST CAUSE OF ACTION

**Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030**

15. Teamable incorporates and realleges all of the above paragraphs as though fully set forth herein.

16. Teamable provided Defendant with access to Teamable's computer systems, to be only used in compliance with Defendant's contractual obligation and Teamable's policies.

17. Teamable's computer systems are used in or affecting interstate commerce and communication and are therefore "protected computers" pursuant to 18 U.S.C. § 1030(e)(2)(B).

18. Defendant intentionally accessed Teamable's computer without authorization or exceeded her authorized access. She deleted, copied, and transferred files off of her protected computer in violation of her employment agreement.

19. Defendant acted knowingly and with the intent to defraud Teamable.

20. As a result of Defendant's unauthorized access, she obtained Teamable's files, trade secrets, and other highly confidential and sensitive information, all of which have independent value.

21.     As a result of Defendant's unauthorized access, Teamable suffered damages and loss in excess of $5,000 dollars, including the costs of investigating and determining which files Defendant deleted, copied, shared and transferred.

22.     As a direct and proximate result of Defendant's misconduct, Teamable has suffered and will suffer damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

**Violation of the California Comprehensive Computer Data Access and Fraud Act, Cal. Pen. Code § 502**

23.     Teamable reiterates and restates the foregoing allegations as if fully set forth herein.

24.     Teamable is the owner, lessee, or licensee of the Teamable computer systems that Defendant improperly accessed.

25.     Defendant committed acts prohibited by California Penal Code Section 502(c), including but not limited to knowingly accessing and taking data from Teamable's computer systems.

26.     Defendant's unlawful acts were undertaken without Teamable's permission.

27.     Teamable was harmed by Defendant's unlawful acts.

28.     Defendant's conduct was a substantial factor in causing Teamable's harm.

## THIRD CAUSE OF ACTION

**Violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq*.**

29.     Teamable reiterates and restates the foregoing allegations as if fully set forth herein.

30.     Teamable's confidential, proprietary, and trade secret information includes, without limitation, (i) Teamable's Proprietary HR Technology, (ii) proprietary algorithms, formula, pattern, compilation, program, source code, methods, techniques, and know-how for candidate matching, (iii) unique methods for analyzing resumes or profiles, (iv) specialized machine learning models for predicting candidate suitability, and (v) exclusive partnerships with job boards and educational institutions which Teamable developed through thousands of man-hours and millions of dollars of investment to revolutionize the use of technology in recruiting.

31. Beginning around September 2016, Teamable devoted months of time developing a first-generation, technology-enabled candidate-sourcing system.

32. The specifics of Teamable's proprietary recruiting technology system is not known to the public and is just one area where Teamable has protectable trade secrets. The specific knowhow developed through the design and implementation of this technology is also not known to the public and another area of protectable trade secrets.

33. In addition, through Teamable's research and development and experience in the field of recruiting technology, Teamable has developed additional trade secrets including a technology-based candidate sourcing workflow, a custom-sentence generation system used to deliver a customized response to prospective recruits, and automated candidate-sourcing queries.

34. Teamable derives independent actual and potential economic value from its Teamable Proprietary HR Technology and related trade secrets not being generally known or available to the public or other persons who can obtain economic value from their disclosure or use. These trade secrets have significant value resulting from Teamable's significant investment of time and resources.

35. Teamable made, and continues to make, reasonable efforts to maintain the secrecy of the specifics of its Teamable Proprietary HR Technology and trade secrets. Among other measures, Teamable limited access to this material by requiring its employees, including Schertz, to sign confidentiality agreements, by establishing and implementing policies requiring confidentiality, and by limiting access, through password protection and similar steps.

36. Upon information and belief, Defendant accessed and downloaded Teamable's trade secrets and confidential information in response and in retaliation to receiving the independent report finding her labor law complaints to be unsubstantiated.

37. Teamable owns all the information, documents, Proprietary HR Technology, trade secret and highly confidential and sensitive material in Defendant's possession which she downloaded or shared from Teamable's servers.

38. Defendant took affirmative steps to steal these documents, including downloading hundreds of documents onto her laptop. Upon information and belief, Defendant pilfered the trade secrets for her wrongful gain.

39. Upon information and belief, Defendant conspired to, and did in fact improperly acquire, disclose, use, and threatened to continue to disclose or use Teamable's Propriety HR technology and related trade secret information.

40. Defendant knew or had reason to know that Teamable's trade secrets were acquired by such improper means.

41. Upon information and belief, Defendant's misappropriation continues to the present day.

42. As a direct and proximate cause of the wrongful conduct by Defendant, Teamable has suffered and will continue to suffer financial losses, imminent and permanent irreparable harm, loss of confidentiality of its trade secrets, loss of goodwill, loss of business opportunities, and other continuing harm.

43. The improper acquisition, disclosure, and use of Teamable's trade secrets and highly confidential and sensitive material is and was a substantial factor in causing Teamable's harm.

44. Defendant acted willfully, maliciously, and with reckless disregard to Teamable's rights.

## FOURTH CAUSE OF ACTION

**Violation of the Misappropriation of Trade Secrets Act, Cal. Civ. Code §§ 3426 *et seq.***

45. Teamable reiterates and restates the foregoing allegations as if fully set forth herein.

46. Teamable owns trade secrets, as defined by California's Uniform Trade Secrets Act ("CUTSA"), Civil Code § 3426.1(d).

47. Teamable's confidential, proprietary, and trade secret information includes, without limitation, (i) Teamable's Proprietary HR Technology, (ii) proprietary algorithms, formula, pattern, compilation, program, source code, methods, techniques, and know-how for candidate matching, (iii) unique methods for analyzing resumes or profiles, (iv) specialized machine learning models for predicting candidate suitability, and (v) exclusive partnerships with job boards and educational

institutions which Teamable developed through thousands of man-hours and millions of dollars of investment to revolutionize the use of technology in recruiting.

48. Beginning around September 2016, Teamable devoted months of time developing a first-generation, technology-enabled candidate-sourcing system.

49. The specifics of Teamable's proprietary recruiting technology system is not known to the public and is just one area where Teamable has protectable trade secrets. The specific knowhow developed through the design and implementation of this technology is also not known to the public and another area of protectable trade secrets.

50. In addition, through Teamable's research and development and experience in the field of recruiting technology, Teamable has developed additional trade secrets including a technology-based candidate sourcing workflow, a custom-sentence generation system used to deliver a customized response to prospective recruits, and automated candidate-sourcing queries.

51. Teamable derives independent actual and potential economic value from its Teamable Proprietary HR Technology and related trade secrets not being generally known or available to the public or other persons who can obtain economic value from their disclosure or use. These trade secrets have significant value resulting from Teamable's significant investment of time and resources.

52. Teamable made, and continues to make, reasonable efforts to maintain the secrecy of the specifics of its Teaamble's Proprietary HR Technology and trade secrets. Among other measures, Teamable limited access to this material by requiring its employees, including Defendant, to sign confidentiality agreements, by establishing and implementing policies requiring confidentiality, and by limiting access, through password protection and similar steps.

53. Upon information and belief, Defendant accessed and downloaded Teamable's trade secrets and confidential information in response and in retaliation to receiving the independent report finding her labor law complaints to be unsubstantiated.

54. Teamable owns all the information, documents, Proprietary HR Technology, trade secret and highly confidential and sensitive material in Defendant's possession which she downloaded or shared from Teamable's servers.

55. Defendant took affirmative steps to steal these documents, including downloading hundreds of documents multiple times per day after she had received Teamable's February 27 Letter. Upon information and belief, Defendant pilfered the trade secrets for her wrongful gain.

56. Upon information and belief, Defendant conspired to, and did in fact improperly acquire, disclose, use, and threatened to continue to disclose or use Teamable's Propriety HR technology and related trade secret information.

57. Defendant knew or had reason to know that Teamable's trade secrets were acquired by such improper means.

58. Upon information and belief, Defendant's misappropriation continues to the present day.

59. As a direct and proximate cause of the wrongful conduct by Defendant, Teamable has suffered and will continue to suffer financial losses, imminent and permanent irreparable harm, loss of confidentiality of its trade secrets, loss of goodwill, loss of business opportunities, and other continuing harm.

60. The improper acquisition, disclosure, and use of Teamable's Proprietary HR Technology, trade secret and highly confidential and sensitive material was a substantial fact in causing Teamable's harm and in unjustly enriching Defendant who intends to use this information as in leverage in her ongoing employment claims against Palmer and Teamable.

61. Defendant acted willfully, maliciously, and with reckless disregard to Teamable's rights.

## FIFTH CAUSE OF ACTION

### Breach of Fiduciary Duty

62. Teamable incorporates and realleges all of the above paragraphs as though fully set forth herein.

63. Defendant was employed as Teamable's Chief Operations Officer.

64. By virtue of her position of trust, authority, and discretion within Teamable, Defendant owed Teamable fiduciary duties, including but not limited to the duties of loyalty, care, and good faith.

65. While Defendant was employed by Teamable, Defendant breached her fiduciary duties to Teamable by, among other thing, misappropriating and converting the Company's trade secret and highly confidential and sensitive information for Defendant's own separate purposes and (upon information and belief) disclosing without authorization this information to third parties to further Defendant's own purposes and interests.

66. Defendant knew that the conduct described herein was against Teamable's interests.

67. Teamable did not give informed consent to Defendant's conduct.

68. Teamable has been harmed as a result of Defendant's conduct. Defendant's unlawful acquisition, use, and disclosure of Defendant's trade secret and highly confidential and sensitive information was a substantial factor in harming Teamable and has caused Teamable to suffer competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because Teamable's remedy at law is inadequate, Teamable seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information.

## SIXTH CAUSE OF ACTION

### Breach of Contract

69. Teamable incorporates and realleges all of the above paragraphs as though fully set forth herein.

70. Teamable and Defendant entered into the CIIAA. The CIIAA is a valid agreement.

71. In the CIIAA, Defendants agreed, inter alia, to protect and preserve Teamable's highly sensitive and confidential, proprietary, and trade secret information, and not to misappropriate Teamable's highly sensitive and confidential, proprietary, and trade secret information.

72. Through the conduct alleged above, Defendant breached her contractual promise in CIIAA § 2(A) to "hold in the strictest confidence" and not to use or disclose any "Company Confidential Information.

73. Defendant also breached her contractual promises in CIIAA § 2(A) to maintain and preserve Teamable's confidential information.

74. Defendant also breached her contractual promises in CIIAA § 5 –6 to maintain and return Teamable's confidential information upon seperation.

75. Through the conduct alleged herein, including the misappropriation of Teamable's intellectual property, trade secret, and highly confidential or sensitive information, Defendant breached her CIIAA.

76. Teamable has been harmed as a result of Defendant's conduct. Defendant's breaches of contract were a substantial factor in harming Plaintiff. If Defendant's conduct is not stopped, Teamable will continue to suffer competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because Teamable's remedy at law is inadequate, Teamable seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information.

## SEVENTH CAUSE OF ACTION

### Declaratory Judgment

77. Teamable incorporates and realleges all of the above paragraphs as though fully set forth herein.

78. There is an actual controversy between Teamable and Defendant regarding the merits of the labor law claims Defendant asserted and which an independent investigation found were unsubstantiated.

79. Teamable seeks a judicial determination that the purported violations of labor law that Defendant has asserted occurred lack merit and are unfounded.

80. A judicial determination is necessary and appropriate at this time because Defendant's conduct is causing Teamable irreparable harm.

81. Teamable accordingly seeks a declaration that the purported violations of labor law that Defendant has asserted occurred lack merit and are unfounded.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court issue the following relief:

A. Preliminary and permanent injunctive relief enjoining Defendant from using or disclosing Teamable's trade secrets or other proprietary information;

B. Return of all Teamable property in Defendant's possession that was previously housed on Teamable's servers, including the return of any work-product generated as a result of Defendant's possession;

C. Damages in an amount to be determined at trial, including but not limited to actual damages, statutory damages, and statutory penalties;

D. Disgorgement of all revenues, profits, enrichment, or other benefits that Defendant received as a result of Defendant's wrongful conduct;

E. Treble damages and disgorgement;

F. Punitive and exemplary damages;

G. Teamable's attorneys' fees and costs; and

H. All such other and further relief as the Court may deem just, proper, and equitable.

Dated:  March 4, 2024                                   Respectfully submitted,

                                                        BRAUNHAGEY & BORDEN LLP

                                                        By:   *s/ Ronald J. Fisher*
                                                              Ronald J. Fisher

                                                        *Attorneys for Plaintiff*
                                                        *Third Street Data, Inc., D/B/A Teamable, Inc.*

**DEMAND FOR JURY TRIAL**

Plaintiff Third Street Data, Inc. D/B/A Teamable Inc., hereby demands a trial by jury pursuant to Fed. R. Civ. Proc. 38(a).

Dated:  March 4, 2024

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By:   *s/ Ronald J. Fisher*
           Ronald J. Fisher

*Attorneys for Plaintiff*
*Third Street Data, Inc., D/B/A Teamable, Inc.*